Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2850 | **DATE** | 9/26/2003 |
| **CASE TITLE** | Horan vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion in limine to bar plaintiffs from offering evidence relating to the appropriate benchmark labor pool for purposes of evaluating actual and expected minority representation in the Chicago Fire Department (76-1) is granted in part and denied in part as described in the attached Memorandum Opinion. Plaintiffs' evidence and argument regarding the appropriateness of reliance and use of census-based data is stricken, except to the extent that it is based on information and evidence derived from the 1995 firefighter entrance examination.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 29 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 99 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 SEP 26 PM 1:22 | date mailed notice | |
| | OR | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JEFFREY HORAN, et al., )
)
        Plaintiffs, )
)
vs. ) Case No. 98 C 2850
)
CITY OF CHICAGO, )
)
        Defendant. )

DOCKETED
SEP 2 9 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this action under 42 U.S.C. §1983 are employed by the Chicago Fire Department. They allege that they were denied or passed over for promotion at various points from 1997 through 2000 because the CFD decided to promote African-American or Latino employees who the plaintiffs, all of whom are white, say were less qualified. The City justified the promotions for various reasons, the primary one being the perceived need to overcome the lingering effects of the CFD's long history of discrimination against minority employees.

This case is not the first one of its kind. In *Chicago Fire Fighters Union Local No. 2 v. City of Chicago*, Case Nos. 87 C 7295, et al. (N.D. Ill.) (*"CFFU"*), Judge James F. Holderman conducted a trial concerning similar CFD promotions during the period from 1987 through 1997. Judge Holderman upheld the promotions after finding that the City's actions were narrowly tailored to remedy the effects of intentional past discrimination. *CFFU*, Nos. 87 C 8295, et al., 1999 WL 1289125 (N.D. Ill. Dec. 30, 1999).

Judge Holderman's decision in *CFFU* was based in part on findings regarding the

appropriate methodology for measuring the shortfall of minorities in the CFD's promotional ranks resulting from the Department's past discrimination. In making these findings, Judge Holderman considered the testimony of Dr. Gerry Suchanek, an expert in labor economics and other subjects who testified on the City's behalf. Dr. Suchanek identified a range of plausible benchmarks to estimate what the composition of the CFD would have been had it not discriminated in hiring and promotion. The data resulting from these benchmarks was compared with the actual composition of the CFD to determine whether, and the extent to which, there was a shortfall of minorities in the Department's promotional ranks. Dr. Suchanek's proposed benchmarks included a census-based benchmark restricted by age, residency, gender and year of hire; a benchmark based on CFD applicant-flow data for the years 1974 through 1985; and a "sustainable hire rate" benchmark based on the racial breakdown of those hired by the CFD from the 1985 firefighter entrance examination.

At trial in *CFFU*, the plaintiffs, Chicago Fire Fighters Union Local No. 2 (which represents all Chicago firefighters) and some of its members, attacked the reliability and materiality of Dr. Suchanek's analyses through argument and evidence. Among other things, they vigorously attacked Dr. Suchanek's reliance on census-based data. The plaintiffs also argued that the court should adopt the minority hiring rate from the 1995 firefighter entrance examination as representing what the CFD would have looked like absent discrimination.

After considering this evidence, Judge Holderman found that the expected racial composition of the qualified and interested labor pool fell somewhere between Dr. Suchanek's census-based benchmark (which had a relatively higher minority component) and his sustainable hire rate benchmark (which had a relatively lower minority component). *Id.*, 1999 WL 1289125,

at *64. Judge Holderman noted, among other things, that a benchmark based on appropriately restricted census information had been approved in a prior decision by the Seventh Circuit in another case involving similar claims against the City concerning CFD promotions, *McNamara v. City of Chicago,* 138 F.3d 1219 (7th Cir. 1998). Based in part on his findings adopting Dr. Suchanek's analyses, Judge Holderman upheld the challenged promotions.

On appeal, the plaintiffs in *CFFU* challenged Judge Holderman's reliance on the census-based benchmark and his failure to take into account the hiring rate from the 1995 firefighter entrance examination, and they attacked Dr. Suchanek's analyses on several other grounds. Plaintiffs' Appeal Brief, pp. 24-29 (attached as Ex. C to Defendant's Motion *In Limine*); *see also id.,* pp. 12-18, 21-22. The Seventh Circuit rejected these challenges and affirmed Judge Holderman's decision. *Chicago Firefighters Local 2 v. City of Chicago,* 249 F.3d 649, 652 (7th Cir. 2001). The court reaffirmed its holding in *McNamara* that a census-based calculation was an appropriate comparative benchmark, rejecting the plaintiffs' challenge that it was the "wrong pool to use to calculate departures from proportionality." *Id.* at 653-54. The court also rejected plaintiffs' argument that Judge Holderman should have used the 1995 hiring data, stating:

> [T]he 1995 examination has never been determined to be an accurate, unbiased test of job-related skills. It has been challenged in litigation, not yet resolved, as being discriminatory, and there is no evidence in the record of this case to validate it as a proper screen for jobs in the fire department.

*Id.* at 654.

Prior to the trial of the present case, the City moved *in limine* to bar the plaintiffs offering any evidence relating to the appropriate labor pool benchmarks for purpose of measuring the disparities between the expected and actual minority representation in the CFD and from offering

3

any evidence in that regard that stemmed from the 1995 firefighter entrance examination. The City argued that these matters had been fully litigated and determined in *CFFU* and that relitigation was barred by the doctrine of issue preclusion, or at least by virtue of *stare decisis*. In response, plaintiffs argued that the City had waived application of issue preclusion; that the issue of the use of data from the 1995 entrance examination was not actually litigated in *CFFU* and was not essential to the judgment in that case; that the 1995 examination represents a change in the controlling facts making application of issue preclusion inappropriate; that evidence developed since the *CFFU* trial showed that the 1995 examination was a valid test of qualifications for the job of firefighter; and that the doctrine of *stare decisis* did not apply. The Court took this motion with the trial, conditionally permitting the plaintiffs to offer evidence on these points while reserving the question of its admissibility.

Before a court may apply issue preclusion to bar relitigation of an issue, it must determine that the issues sought to be precluded were the same as those involved in the prior case, those issues were actually litigated in the prior case, their determination was essential to the judgment, and the party against whom preclusion is involved was fully represented in the prior case. *See, e.g., People Who Care v. Rockford Board of Education*, 68 F.3d 168, 172 (7th Cir. 1995).

The Court rejects plaintiffs' argument that the City has waived application of issue preclusion by failing to plead it as an affirmative defense. The City's answer specifically asserts that Judge Holderman's decision "operate[s] as res judicata in this action." Answer to Fourth Amended Complaint, p. 108-09. This reference to the term sometimes used generically to describe the doctrines of claim preclusion and issue preclusion was sufficient to raise the point.

Though the plaintiffs in this case, all of whom are individuals, do not appear to have been

4

individual plaintiffs in *CFFU*, they do not challenge the application of issue preclusion or *stare decisis* on that basis. All of the plaintiffs are members of Local No. 2, which was a plaintiff in the prior litigation, and as such they are barred from relitigating already-determined issues to the same extent the Local would be barred. *See, e.g., Joint Apprenticeship and Training Council, 363 v. New York Department of Labor*, 842 F. Supp. 1561, 1566-67 (S.D.N.Y. 1994); *Majeske v. City of Chicago*, No. 98 C 7262, 1998 WL 312016, at *6 (N.D. Ill. June 4, 1998). Again, plaintiffs do not argue otherwise.

There is no question that the appropriateness of relying on the 1995 examination results was actually litigated in *CFFU*; that much is clear from the Seventh Circuit's decision. But that decision does not indicate that use of the 1995 data was, or should be, barred for all time in future litigation regarding CFD promotions. Rather, the court pointed out that the 1995 examination was subject to a pending court challenge and that no evidence had been adduced to support the proposition that it was a valid measure of qualifications to be a firefighter. This suggests that the court did not intend to preclude the possibility of reconsideration of the point in the future.

Plaintiffs note that in his written rebuttal report in *CFFU*, Dr. Suchanek stated that significant deviations from his benchmarks would be consistent with a finding of racially biased hiring and promotion "unless unbiased practices can be shown to generate the same minority underrepresentation." Pltf. Ex. D, p. 24. They contend that the 1995 examination results are exactly the type of evidence that Dr. Suchanek suggested might affect his analyses. More importantly, plaintiffs point out that the report of the City's consultant (Dr. James Outtz) regarding the validity of the 1995 examination, and the initial hiring data from that examination,

5

were first produced to them in *CFFU* just before trial, leaving them with no realistic opportunity to address these points fully at the trial. Due process does not permit application of issue preclusion against a party who lacked a full and fair opportunity to litigate the issue in the prior proceeding. *People Who Care,* 68 F.3d at 178 (citing *Kunzelman v. Thompson,* 799 F.2d 1172, 1176 (7th Cir. 1986)). For this reason, the Court concludes that neither issue preclusion nor *stare decisis* bars plaintiffs from introducing evidence regarding the 1995 examination or from arguing that evidence regarding that examination and resulting hiring should affect the analysis of whether, and to what extent, the CFD still experienced the lingering effects of prior discrimination at the time of the promotions challenged in this case.

That does not mean, however, that plaintiffs are free to relaunch their attack on Dr. Suchanek's or the Court's reliance on census-based data as setting an appropriate upper-end benchmark for the expected minority composition of the CFD. Indeed, plaintiffs did not argue otherwise in their response to the City's motion *in limine*. The City's motion made it clear that it sought to bar relitigation of that particular point. *See* Defendant's Motion *In Limine,* ¶7 ("In this case, plaintiffs seek to overturn the Seventh Circuit's prior ruling in *CFFU* and *McNamara* that a census-based labor pool is the appropriate benchmark population of measuring the disparity between the actual and expected minority representation in the CFD."); *id.,* p. 4 ("plaintiffs should be barred from offering any evidence relating to the following issues at trial ...: (1) the appropriate benchmark labor pool for purposes of measuring the shortfall of blacks and Hispanics in the CFD promotional ranks ...."); Defendant's Memorandum in Support of Motion *In Limine,* p. 15 (same as previous reference); *id.,* pp. 7-8 (discussing the Seventh Circuit's rejection in *CFFU* of plaintiffs' challenge to use of the census-based benchmark and arguing that

plaintiffs are seeking improperly to relitigate that point). Aside from claiming waiver, plaintiffs made no argument in their response to the motion to the effect that they should be permitted to relitigate that issue. Rather, they trained their guns exclusively on the issue of the 1995 examination and hiring data.

There is no question, as discussed earlier, that the appropriateness of reliance on a census-based benchmark was fully and fairly litigated in *CFFU*. Likewise, there is no doubt that Judge Holderman's reliance on census-based data was necessary to his decision in the case, and no doubt that the Seventh Circuit's approval of that data was necessary to its decision affirming the judgment – and plaintiffs do not argue otherwise. The same issue is presented in this case, and as noted earlier, plaintiffs concede that they were fully represented in *CFFU*. For these reasons, the doctrine of issue preclusion bars them from once against contesting the appropriateness of reliance on census-based data. And to the extent basic fairness is a proper consideration in the analysis (a point not argued by plaintiffs), application of issue preclusion is entirely fair in this instance. The use and reliance on census-based data was a central issue in the earlier litigation, was vigorously disputed, and was determined against the plaintiffs in *CFFU*. In addition, plaintiffs are represented by same counsel who represented their union in that case. The important policies that underlie the doctrine of issue preclusion would be undermined were the Court to revisit the issue from scratch as if it had never been litigated and decided.

For these reasons, the Court rules that plaintiffs are barred from challenging the appropriateness of reliance on census-based data, except to the extent their challenge is premised on the 1995 examination and hiring data that we have ruled they may use in this case.

7

## Conclusion

Defendant's motion *in limine* to bar plaintiffs from offering evidence relating to the appropriate benchmark labor pool for purposes of evaluating actual and expected minority representation in the Chicago Fire Department [docket #76-1] is granted in part and denied in part as described in this Memorandum Opinion. Plaintiffs' evidence and argument regarding the appropriateness of reliance and use of census-based data is stricken, except to the extent that it is based on information and evidence derived from the 1995 firefighter entrance examination.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 26, 2003

8